**Sharon R. WILLIAMS, Plaintiff,**

v.

**PENNSYLVANIA STATE POLICE–BUREAU OF LIQUOR CONTROL ENFORCEMENT, et al., Defendants.**

**No. 99–2128.**

United States District Court, E.D. Pennsylvania.

Aug. 14, 2000.

462

Brian M. Puricelli, Newton, PA, for Plaintiff.

Randall J. Henzes, Office of Atty. General, Philadelphia, PA, for Defendants.

### MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Now before the Court is the motion of defendants the Bureau of Liquor Control Enforcement of the Pennsylvania State Police, James P. Corcoran, Mary Lou Corbett, Robert Hickes, Alfred Campbell, Bet- tina Bunting, and Thomas Bickta for summary judgment as to the claims of plaintiff Sharon Williams, who claims defendants engaged in unlawful and unconstitutional discrimination against her on the basis of her race, sex, and disability. For the following reasons, the motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Williams is an African American woman who has been employed as a liquor enforcement officer with the Bureau of Liquor Control Enforcement of the Pennsylvania State Police ("Bureau") since 1982.[1] Among her duties as a liquor enforcement officer are the investigation of violations of Pennsylvania laws and regulations related to the sale and consumption of alcohol, conducting undercover surveillance of establishments serving alcohol, leading and assisting in raids of such establishments, participating in prosecutions for alcohol-related violations, and training others to perform the duties of a liquor enforcement officer. (Plaintiff's Exh., Vol. 3, Tab. 1, Job Description, Sharon R. Williams, May 30, 1996; Identification of Essential Job Functions, Sharon R. Williams). Her job involves "consuming, or feigning the consumption of, alcoholic beverages." (*Id.*). Plaintiff is a recovering alcoholic.

Williams alleges that since October 1995, she has been subjected to discrimination and harassment by the individual defendants, James P. Corcoran, Mary Lou Corbett, Robert Hickes, Alfred Campbell, Bettina Bunting, and Thomas Bickta (collectively, the "individual defendants"), and the Bureau, on the basis of her race, sex, and disability. The conduct of which plaintiff complains includes three formal actions taken by the Bureau with the participation of some or all of the individual defendants: (1) in April, 1996, she was suspended for 15 days without pay after

---

1. Plaintiff's service at the Bureau was interrupted in 1993 when she was terminated for cause. She was rehired the following year. Plaintiff does not appear to challenge that termination in this case.

an investigation into her practice of leaving the office prior to end of her shift and conducting personal business during work hours; (2) in February 1997, she was prevented from returning to work after an extended leave of absence and forced to take an additional 11 days of sick leave; (3) in 1998, she was placed on restricted duty, assigned to a desk, and ordered to relinquish her badge, gun, and state vehicle.

Plaintiff also claims that defendants have discriminated against her in less formal ways: denying her opportunities to receive training; presenting false information in investigations and at hearings; initiating unfounded and retaliatory investigations; giving her low marks on performance evaluations; issuing written reprimands; behaving confrontationally toward her; publicly degrading and humiliating her; giving her undesirable and dangerous work assignments; and ignoring her complaints of harassment and discrimination.

Plaintiff asserts claims against the Bureau under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Stat. §§ 951, *et seq.* ("PHRA"). She also asserts against the individual defendants constitutional claims under 42 U.S.C. §§ 1981 and 1983 and aiding and abetting claims under the PHRA. All defendants have moved for summary judgment.

## II. ANALYSIS

In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (citing *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994)). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250, 106 S.Ct. 2505.

On a motion for summary judgment, the facts should be reviewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact and avoid summary judgment. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

### A. Discrimination on the Basis of Disability

Plaintiff argues that the Bureau discriminated against her on the basis of a disability in violation of the ADA and the PHRA. In particular, she claims the Bureau regarded her as suffering from the disability of alcoholism and took adverse employment actions against her because of that disability.

Casting a shadow over plaintiff's ADA claim is the doctrine of state immunity from suit embodied in the Eleventh Amendment to the United States Constitution. That shadow has lengthened considerably in a series of recent Supreme Court cases addressing the authority of Congress to abrogate states' sovereign immunity.

*See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

■ Just days ago, in *Lavia v. Commonwealth of Pennsylvania,* 224 F.3d 190 (3d Cir.2000), the Court of Appeals for the Third Circuit extended the holdings of those Supreme Court cases to the ADA by holding that the suits against states and their agencies under the ADA are barred by the doctrine of sovereign immunity under the Eleventh Amendment. *See id.,* slip op., at 24, ——. *Lavia* compels me to the conclusion that the Bureau, which is part of the Pennsylvania State Police and a state agency of the Commonwealth of Pennsylvania,[2] is immune from suit under the ADA, and therefore summary judgment will be granted as to plaintiff's ADA claim.

■ The same analysis and result applies to plaintiff's disability-based discrimination claims against the Bureau and the individual defendants under the PHRA. While the PHRA has been held to waive Pennsylvania's immunity from suit in state court, *see Mansfield State Coll. v. Kovich,* 46 Pa.Cmwlth. 399, 407 A.2d 1387, 1388 (1979), that waiver does not subject Pennsylvania to a PHRA suit in *federal* court, *see Irizarry v. Pennsylvania Dep't of Transp.,* No. 98–6180, 1999 U.S. Dist. LEXIS 5890, at *13 (E.D.Pa. Apr. 19, 1999); *McLaughlin v. State System of Higher Educ.,* No. 97–1144, 1999 U.S. Dist. LEXIS 4325, at *17 n. 4 (E.D.Pa. Mar. 31,

1999); *Fitzpatrick v. Pennsylvania,* 40 F.Supp.2d 631, 635 (E.D.Pa.1999). Indeed, Pennsylvania law, 42 Pa.C.S.A. § 8521(b), is quite explicit on this point: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." Thus, a plaintiff may never pursue a PHRA claim against Pennsylvania or its agencies in federal court. For that reason, plaintiff's claims pursuant to the PHRA will be dismissed without prejudice.[3]

## B. Discrimination Based on Race and Sex

Plaintiff alleges that the Bureau violated Title VII in three ways. First, plaintiff alleges that the Bureau retaliated against her for filing a discrimination complaint with the Pennsylvania Human Relations Commission (PHRC). Second, plaintiff asserts she was treated differently because of her race and gender. Third, plaintiff claims she was subjected to a hostile work environment. The Bureau moves for summary judgment as to all three claims.

### 1. *Retaliation*

[3] In order to prove a retaliation claim under Title VII, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer took an adverse employment action after or at the same time as the employee's protected activity; and (3) there was a causal link between the protected activity and the adverse action. *See Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 (3d Cir.2000). Plaintiff argues that the Bureau retaliated against her for three different protected activities.

---

**2.** *See Pennsylvania State Police v. Beer & Pop Warehouse, Inc.,* 145 Pa.Cmwlth. 355, 360, 603 A.2d 284, (1992) (holding that the interpretation of the Bureau of Liquor Control Enforcement of its own statute is entitled to deference because it is a state agency).

**3.** This conclusion applies to all of plaintiff's PHRA claims, including those based on race and sex.

#### a. 1996 PHRC Charge

■ Plaintiff filed a charge with the PHRC on February, 28, 1996, alleging that one of her supervisors, Bettina Bunting, had discriminated against her on the basis of race and sex. Filing a charge with the PHRC is a protected activity. On August 23, 1996, Bunting filed a complaint against plaintiff with the Bureau of Professional Responsibility (BPR) that stated,

> On 02/28/96 you filed a complaint with the Pennsylvania Human Relations Commission. In this PHRC charge you allege four LEOs (liquor enforcement officers) at DEO # 1 had 'left the work site early in the month of October, 1995, and were never disciplined.' This BPR complaint was initiated due to your alleged failure to notify the Department in a timely manner of these alleged infractions by the four named LEOs.

(Plaintiff's Exh., Vol. 4, Tab 10, Notification of Inquiry, BPR 9711, August 23, 1996). Following an investigation, the director of operations of the Bureau informed Williams by letter that he had "reviewed the completed investigative report and determined that no administrative action will be taken against you in this matter." (*Id.*, Letter from Alfred Campbell, Director, Division of Operations, Oct. 7, 1996). Thus, while there is evidence on the face of Bunting's BPR complaint from which a reasonable jury could conclude that Bunting's BPR complaint was initiated in retaliation for plaintiff's 1996 PHRC charge, the BPR complaint did not lead to any adverse employment action, and thus fails the second prong of the retaliation analysis.

■ Plaintiff advances evidence of other adverse employment actions taken after the filing of her February 1996 PHRC charge, including a 15–day suspension, levied on April 10, 1996, for leaving work early and engaging in non-duty work during her shift. (Defendant's Exh. 3, Deposition of Alfred Campbell, Director, Division of Operations, Oct. 25, 1999, at 84).[4] However, there is no evidence of a causal nexus between plaintiff's filing of her PHRC charge and the 15–day suspension. The sequence of events alone belies plaintiff's retaliation claim; the BPR complaint that sparked the investigation leading to the suspension was initiated in November 1995, months prior to the filing of plaintiff's 1996 PHRC charge, and the investigation was completed before plaintiff filed the 1996 complaint. There is no other testimonial or documentary evidence linking the complaint and the suspension. Accordingly, I conclude that no reasonable trier of fact could find that the 15 day suspension was tainted by a retaliatory motive arising from plaintiff's 1996 PHRC charge, and thus the Bureau is entitled to summary judgment in its favor on this claim.

#### b. 1997 PHRC Charge

Plaintiff also claims that she was retaliated against for the protected activity of filing a charge of discrimination with the PHRC on September 22, 1997, in which she alleged that she was treated differently on the basis of a disability, as well as her race and sex. (Plaintiff's Exh., Vol. 2, Tab 4, Charge of Discrimination, Sept. 22, 1997). Plaintiff alleges that after she filed the 1997 PHRC charge, the Bureau retaliated against her by placing her on restricted duty in late 1998.

■ The evidence reveals no causal link between the filing of plaintiff's 1997 PHRC charge and the 1998 placement on restricted duty. The lack of temporal proximity between the two events, more than a year, substantially undermines plaintiff's efforts to establish causation. *See Farrell*, 206 F.3d at 279–82 (discussing the importance of temporal proximity in establishing causal link between protected activity and ad-

---

4. That suspension was reduced by an arbitrator to 10 days, upon a finding that not all of the alleged violations were substantiated.

(Plaintiff's Exh. 8, Grievance Opinion and Award, April 13, 2000).

verse employment action). There is no reference to her PHRC charge in any of the documents related to her placement on restricted duty, nor is there any testimony or other evidence from which a reasonable jury could find that she was retaliated against because she filed the 1997 PHRC charge. The Bureau is thus entitled to summary judgment in its favor on this claim.

### c. Advocacy for Minority Hiring

Plaintiff advances evidence of her advocacy for an increase in the number of minority liquor enforcement officers at the Bureau, (Plaintiff's Exh., Vol. 4, Tab. 7, Memorandum from Sharon R. Williams, Jan. 23, 1998), and argues that she was retaliated against for engaging in that protected activity. Again, however, there is insufficient evidence from which a reasonable factfinder could infer that she was treated adversely because of her advocacy. Plaintiff fails to connect the dots between her efforts to increase the number of minorities in the Bureau and any tangible adverse employment action taken against her, and thus cannot establish a *prima facie* case of retaliation.

### d. Conclusion

 I have scoured the record for evidence to support plaintiff's claim of retaliation and have come up empty-handed.

Plaintiff presents no evidence of other adverse employment actions that could form the basis for a retaliation claim.[5] While plaintiff engaged in protected activities, and was subjected to some adverse employment actions, she has not adduced sufficient evidence from which a reasonable jury could find a causal nexus between the two. At best, the evidence demonstrates that plaintiff and her supervisors, Bunting and Corbett, had disagreements, and that Bunting and Corbett on occasion took actions that plaintiff speculates were motivated by a retaliatory animus. This is not a sufficient basis for a retaliation claim and, therefore, summary judgment will be granted in favor of the Bureau as to plaintiff's claims of retaliation.

### 2. Disparate Treatment

Plaintiff also asserts a disparate treatment claim, which requires plaintiff to show that she was "singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion." *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir.1990).

 One genuine issue of material fact arises out plaintiff's evidence that she was treated differently from other alcoholics who were not of her race or sex. She points to three other white male Bureau employees in similar positions who were known to have suffered from alcoholism

---

5. Plaintiff alleges that Corbett gave her low marks on her performance evaluations in retaliation against plaintiff's engagement in protected activities. However, "[a] poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment. An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Spears v. Missouri Dep't of Corrections & Human Resources*, 210 F.3d 850, 854 (8th Cir.2000) (citing *Enowmbitang v. Seagate Tech., Inc.*, 148 F.3d 970, 973–74 (8th Cir.1998); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997); and *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir.1999)). Plaintiff points

to no evidence that these performance evaluations prevented her from promotion or caused her to be demoted or denied her other employment opportunities. *See Siko v. Kassab, Archbold & O'Brien, L.L.P.*, No. 98–402, 2000 WL 307247, 2000 U.S. Dist. LEXIS 3710, at *14 (E.D.Pa. Mar. 24, 2000). I conclude that a reasonable jury could not find that the lower performance evaluations were adverse employment actions under Title VII.

Plaintiff also complains that Bunting gave her dangerous work assignments to retaliate against plaintiff for filing her 1996 PHRC charge. However, plaintiff advances no evidence of a causal connection between her work assignments and the PHRC charge or any other protected activity, other than her belief that the assignments were given out of spite.

but were treated more favorably than she was. Plaintiff testified at her deposition that: (1) Tyler Morgan, a white male employee with the Bureau, went on disability for alcoholism and returned to the force on full duty, with gun and badge (Williams Deposition I, at 92–93); (2) Richard Veit, a white male, submitted a memo to the Bureau informing them that he had recently emerged from alcohol treatment, yet was not placed on limited duty (Defendants' Exh. 1A, Deposition of Sharon Williams, Dec. 22, 1999, at 93–95) ("Williams Deposition II"); and (3) David Eichensehr, another white male liquor enforcement officer who the Bureau knew to be an alcoholic, yet allowed to remain on active duty (Plaintiff's Exh. 11, Affidavit of Sharon Williams, at ¶ 9). Plaintiff's account also is supported by the deposition of another Bureau employee. (Plaintiff's Exh. 1, Affidavit of Michael H. Dever, at ¶ 6).[6]

This evidence demonstrates at least one genuine issue of material fact; a reasonable jury could find on the basis of plaintiff's deposition testimony that she was singled out and treated less favorably because of her race and gender.[7] Therefore, the Bureau's motion for summary judgment on plaintiff's disparate treatment claim will be denied.

### 3. *Hostile Work Environment*

■ To establish a hostile work environment claim under Title VII, a plaintiff must show that: (1) she suffered intentional discrimination because of her race or sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) a reasonable person would have been detrimen-

tally affected by such discrimination; (5) *respondeat superior* liability existed. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999).

■ Plaintiff's evidence in support of her hostile work environment claim underwhelms me. While plaintiff may have been treated differently than others and may have been detrimentally affected by it, she has failed to produce evidence from which a reasonable jury could infer that she was treated differently *because of* her race or her gender. Construing the evidence in the light most favorable to the plaintiff, the most one could conclude is that over the past five years, plaintiff received poor performance evaluations, was the subject of three BPR complaints (only one of which resulted in any disciplinary action), and had interpersonal conflicts with her supervisors and co-workers. I conclude that a reasonable jury could not find that that conduct rose to the level of severe or pervasive mistreatment required to sustain a hostile work environment claim.

Therefore, summary judgment will be granted to the Bureau on plaintiff's hostile work environment claim.

### C. Constitutional Claims Against Individual Defendants

Plaintiff alleges that the individual defendants violated her constitutional rights under the First, Fifth, Sixth, and Fourteenth amendments. These constitutional claims are asserted against the individual defendants in their individual, not official,

---

6. A letter from the State Police Medical Officer, Michael S. Marrone, reads, "Please be aware that several of our Liquor enforcement officers are recovering alcoholics and are still able to perform their jobs in a full, unrestricted manner." (Plaintiff's Exh. 5, Letter from Michael S. Marrone, Nov. 12, 1998, at 2). The letter contains no reference to the race or sex of those individuals.

7. Plaintiff contends that she has advanced evidence of other forms of disparate treatment, including an allegation that she was suspended without pay for leaving the office during her shift and completing work at home, while her white co-workers who engaged in the same activity were not subjected to such discipline. However, as one genuine issue of material fact is sufficient to defeat summary judgment on this claim, I need not search for additional issues of fact.

capacities, under 42 U.S.C. §§ 1981[8] and 1983.[9]

■ At the outset, I must address defendants' argument that a number of the events and injuries upon which plaintiff's claims are based are time-barred. In actions under both §§ 1981 and 1983, federal courts apply the state's statute of limitations for personal injury, which, in Pennsylvania, is two years. *See* 42 Pa.C.S.A. § 5524; *Stinson v. Pennsylvania State Police*, No. 98–1706, 1998 WL 964215, 1998 U.S. Dist. LEXIS 17649, at *10 (E.D.Pa. Nov. 2, 1998) (citing *Goodman v. Lukens Steel Company*, 777 F.2d 113, 117–21 (3d Cir.1985), *aff'd*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987)). As this action was filed on April 27, 1999, any cause of action based on an injury of which plaintiff knew or should have known prior to April 27, 1997 is time-barred.[10] This excludes a number of plaintiff's alleged injuries, including her suspensions in 1996 and 1997, and the BPR complaints initiated from 1995–97. Essentially, the only conduct that plaintiff has established within the statute of limitations are her placement on restricted duty in 1998; the consequent confiscation of her badge, gun, and state vehicle; and less formal measures such as lower performance evaluations, confrontational conduct, and closer scrutiny of her work by her supervisors.[11]

## 1. First Amendment [12]

■ Plaintiff's First Amendment claim mirrors her Title VII retaliation claim. To prevail on a First Amendment claim as a public employee, an employee's conduct must address a matter of "public concern;" the expression must outweigh

**8.** Section 1981, as amended, provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

**9.** Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in a[ ] … proper proceeding for redress.

**10.** Plaintiff argues that the two-year statute of limitations as to her suspensions were tolled during the pendency of plaintiff's grievance appeals. However, statutes of limitation are tolled only when exhaustion is required and the Supreme Court has made it clear that exhaustion is not required when § 1983 claims are involved. *See Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *O'Neill v. City of Philadelphia*, 32 F.3d 785, 799 (3d Cir.1994) (Lewis, J., dissenting) ("Section 1983 plaintiffs may forego opportunities to seek recourse through state administrative and judicial processes and elect to bring their federal claims, in the first instance, in federal court."), *cert. denied*, 514 U.S. 1015, 115 S.Ct. 1355, 131 L.Ed.2d 213 (1995). Nor can plaintiff rely on a continuing violation theory; she neither argues nor presents evidence to support the application of that theory to her this action.

**11.** I note that plaintiff's § 1983 claims against the individual defendants in their individual capacities avoid the Eleventh Amendment problems that doomed her ADA claim. *See Hafer v. Melo*, 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (Eleventh Amendment does not bar federal section 1983 action against state officials in their individual capacity for conduct undertaken as part of their state jobs and duties).

**12.** I share defendants' perplexity with the assertion in plaintiff's complaint that her Fifth and Sixth amendment rights were violated by defendants. The Fifth Amendment does not operate here, as there is neither allegation nor evidence of double jeopardy, compelled testimony, a taking, or a deprivation of liberty or property by the government. Nor does the Sixth Amendment apply here; this is not a criminal case. Plaintiff does not respond to defendants' arguments on this issue, and conclude that plaintiff cannot pursue any § 1983 claims based on the Fifth or Sixth amendments.

the government's interest in performing its functions for the public; and the expression must have been a motivating factor in the adverse employment decision. *See Azzaro v. County of Allegheny,* 110 F.3d 968, 976, 981 (3d Cir.1997). While Williams' PHRC charges and advocacy for increased minorities at the Bureau were undoubtedly matters of public concern that outweighed any government interest in suppressing them, as discussed above in plaintiff's retaliation claim, I can find no evidence upon which a reasonable factfinder could determine that any of the injuries plaintiff suffered after April 27, 1997, such as her placement on restricted duty, were inflicted in retaliation for her filing of PHRC charges or her urging the Bureau to hire more minority liquor enforcement officers. Therefore, summary judgment will be granted to all individual defendants as to plaintiff's First Amendment claim.

### 2. *Procedural Due Process*

■ A procedural due process claim under the Fourteenth Amendment require a two-step analysis that involves (1) an identification of the protected liberty or property interest at issue, and (2) an assessment of what process is due to protect that interest. The Supreme Court recently observed that it had never extended the protections of the Due Process Clause to "discipline of tenured public employees short of termination," and merely assumed that the Due Process Clause covered such conduct for the purpose of analysis. *Gilbert v. Homar,* 520 U.S. 924, 928–29, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). It is therefore an open question as to whether, in the wake of the Supreme Court's holding in *Gilbert,* a public employee's property interest is violated by conduct short of termination.[13]

■ Regardless of whether something less than the termination may implicate a constitutional property interest held by a public employee, I conclude that there is no property interest at issue here sufficient to trigger the procedural protections of the Due Process Clause. The only injury not barred by the statute of limitations to which plaintiff could object on procedural due process grounds was her placement on restricted duty and the attendant confiscations of her badge, gun, and state vehicle.[14] The property interest plaintiff claims is far less substantial than termination, formal demotion, or suspension without pay. While the conduct of the Bureau and defendants might be classified as an adverse employment action, I conclude it does not rise to the level of a *constitutional* deprivation. In light of the Supreme Court's hesitance to constitutionalize a public employee's property interest short of termination, and in light of the relative insubstantiality of the property interest asserted here, plaintiff's procedural due process claims against all the individual defendants will fail.

### 3. *Substantive Due Process*

■ Plaintiff's substantive due process claim fails because she has not asserted a property interest that is so fundamental as to be "deeply rooted in this Nation's history and traditions." *Washington v. Glucksberg,* 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting *Moore v. East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932,

---

**13.** Plaintiff argues that the Court of Appeals for the Third Circuit has found that a property interest was at issue in a case involving suspension without pay and demotion, citing as authority *Homar v. Gilbert,* 89 F.3d 1009 (3d Cir.1996). However, that decision was overruled in *Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).

**14.** It is difficult to see how any of the actions of the individual defendants during grievance hearings injured plaintiff in a manner sufficient to trigger procedural due process protections, as plaintiff was given ample opportunity to be heard in those settings and confront any false statements made by defendants, and, moreover, both hearings resulted in substantial reductions in the severity of the disciplinary measures levied against her.

52 L.Ed.2d 531 (1977) (plurality opinion)).[15] This precise question was addressed recently by Judge Vanaskie of the Middle District of Pennsylvania, on remand from the Supreme Court, in *Homar v. Gilbert,* 63 F.Supp.2d 559 (M.D.Pa.1999). Reviewing Supreme Court and Third Circuit precedent, Judge Vanaskie concluded that "public employment is not a 'fundamental' property interest that implicates substantive due process where an individual, non-legislative employment decision is at issue." *Id.* at 576. I concur with Judge Vanaskie's reasoning and analysis, and conclude that all individual defendants are entitled to judgment as a matter of law on plaintiff's substantive due process claim.

### 4. *Equal Protection*

█ The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This provision embodies the general rule that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *see also Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997) (citations omitted). The *sine qua non* of any successful Equal Protection claim under § 1983 is purposeful discrimination. *See Keenan v. City of Philadelphia,* 983 F.2d 459, 465 (3d Cir.1992); *Andrews v. Philadelphia,* 895 F.2d 1469, 1478 (3d Cir. 1990). This is what distinguishes § 1983 equal protection claims from Title VII cases; to prevail on a § 1983 claim, a plaintiff must prove that the defendant intended to discriminate. *See Washington v. Davis,* 426 U.S. 229, 238–39, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). A plaintiff must produce direct or indirect evidence of intent. However the threshold of indirect proof for a *prima facie* case of equal protection violation is higher than in a Title VII case; a § 1983 plaintiff must show disparate impact *plus* some additional "indicia of purposeful discrimination." *Pennsylvania v. Flaherty,* 983 F.2d 1267, 1273 (3d Cir.1993).

Plaintiff has produced insufficient evidence from which a jury could infer that any of the defendants purposefully intended to discriminate against her on the basis of race or sex.[16] However, she has pro-

---

**15.** Technically, because this is a case involving executive, rather than legislative conduct, the case is governed by *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), which requires a threshold inquiry into whether the injurious acts "shocks the conscience," and then moves to the *Glucksberg* question of history and tradition. However, even assuming that the conduct here shocked the conscience, which I do not believe it did, it is clear that plaintiff has not asserted a right deeply rooted in our nation's history and traditions, and therefore her substantive due process claim fails.

**16.** As discussed above, plaintiff has produced indirect evidence from which a reasonable jury could infer that she was singled out and treated less favorably because of her race and sex under Title VII. However, she has not produced any additional evidence of *purposeful discrimination* ("disparate impact-plus") against her because of race and sex by any of the individual defendants, as is required under the Fourteenth Amendment. Beyond the evidence of disparate impact (that is, that other people not of her race and sex were treated differently than she), she offers nothing from which a reasonable jury could infer that such treatment was purposeful. There is no evidence that any of the defendants treated any other individual differently on the basis of their race or sex. The lack of a substantial number of racial minorities in the Bureau is simply additional evidence of disparate impact, and does not show the level of intent required for a jury to conclude that an equal protection violation has taken place.

Moreover, plaintiff's evidence that minorities are disciplined by the Bureau at a higher rate than non-minorities is insufficient evidence of purposeful discrimination. Plaintiff offers as proof of intentional discrimination disciplinary action reports from the Pennsylvania State Police. (Plaintiff's Exh., Vol. 3, Tab 5, Disciplinary Action Reports). These reports, however, appear to reflect the disciplinary practices of the Pennsylvania State Police as a whole, and do not offer minority discipline figures for the Bureau alone, thus making it impossible to gauge whether the Bureau's disciplinary practices are discriminatory. Furthermore, plaintiff offers no

duced direct evidence of intent to discriminate against her because of her *disability.* The evidence on the record indicates that plaintiff submitted to Stacey Marshall, the Bureaus's district office commander, a letter from plaintiff's psychologist that, among other things, informed Marshall that plaintiff Williams was "a recovering alcoholic." (Plaintiff's Exh. 7, Letter from Gordon A. Bell, July 13, 1998).[17] Marshall then initiated an investigation as to whether plaintiff should be placed on limited duty, (Plaintiff's Exh. 4, Memorandum from Stacey R. Marshall, District Office Commander, Sept. 21, 1998, at ¶ 2), despite the fact that plaintiff informed Marshall that she did not want to placed on limited duty (Plaintiff's Exh. 7, Memorandum from Sharon Williams, July 27, 1988). On October 8, 1998, defendant Alfred Campbell, the director of the Bureau's division of administration wrote a memorandum in which he recommended to the director of the Bureau that because of plaintiff's revelation that she was an alcoholic, she should undergo "reasonable test(s) and /or examination to determine her fitness for duty." (Memorandum from Alfred Campbell, Director of the Division of Administration, Oct. 9, 1998). The director of the Bureau signed off on the tests. (Memorandum from Leonard H. McDonald, Acting Director, Bureau of Liquor Control Enforcement, Oct. 13, 1998).

Plaintiff was then evaluated by state police medical officer Michael S. Marrone and given and independent psychiatric evaluation by James B. Pierce III, who concluded that, in part because of her alcoholism, plaintiff was not able to perform her job. (Plaintiff's Exh., Vol. 3, Tab 1, Letter from James B. Pierce III, Dec. 4, 1998, Plaintiff's Exh., Vol. 3, Tab 2, Letter of Michael S. Marrone, July 16, 1999). In a memorandum referencing the independent psychiatric evaluation, plaintiff was placed on restricted duty ordered to surrender her gun, badge, and state vehicle. (Plaintiff's Exh. 4, Memorandum from Thomas K. Coury, Deputy Commissioner of Administration Dec. 30 1998, at ¶¶ 1,2 ).

 The Bureau's intent to place plaintiff on restricted duty because of her alcoholism is apparent on the face of the documents that justify that action. This is precisely the kind of direct evidence of intentional discrimination required to establish an equal protection violation; officials within the organization essentially stated on paper that plaintiff was effectively being demoted because she was an alcoholic. Therefore, plaintiff's disability-based equal protection claim will survive summary judgment.[18]

Not all the individual defendants, however, were involved in the decision to place plaintiff on restricted duty because of her alcoholism. Of the individual defendants, a reasonable jury could find from the evidence submitted by plaintiff that only Campbell was involved in that decision. (Plaintiff's Exh. 4, Memorandum From Alfred Campbell, Acting Director, Dec. 31, 1998).[19] Thus, summary judgment will be

benchmark against which to measure the numbers in the reports, and thus the Court cannot compare the percentages of minorities who are disciplined with the overall number of minorities employed by the Bureau. A reasonable jury could not infer from the disciplinary action report summaries produced by plaintiff that the Bureau intentionally discriminates against minorities.

**17.** Subsequently, on at least two occasions, Williams spoke with Marshall of her alcoholism and Marshall informed the director of the Bureau's division of operations of Williams' alcohol problem. (Plaintiff's Exh. 4, Memo-

randum from Stacey R. Marshall, District Office Commander, Sept. 21, 1998, at ¶¶ 4, 5).

**18.** Discrimination on the basis of disability is not subject to the heightened levels of scrutiny required in cases involving race and sex, and therefore, at trial, defendants may show that they had a rational basis for their decisions regarding plaintiff's disability. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 442–44, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

**19.** Corcoran and Hickes were apparently no longer employed by the Bureau in 1998, when

denied on plaintiff's equal protection claim as to Campbell, but granted as to Bunting, Corbett, Corcoran, Hickes, and Bickta.

### 5. *Section 1981 Claims*

 To prevail on a claim under § 1981, a plaintiff must show: "(1) that she is a member of a racially cognizable group; (2) the defendants' intention to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, that is, making and enforcing contracts." *Wood v. Cohen*, Nos. 96–3707, 97–1548, 1998 WL 88387, 1998 U.S. Dist. LEXIS 2222, at *5 (E.D.Pa. Mar. 2, 1998) (citations omitted). Plaintiff's § 1981 claim fails for the same reasons her race-based § 1983 equal protection claim fails; she has produced no evidence from which a reasonable jury could infer purposeful, intentional racial discrimination on the part of any of the individual defendants. She has merely demonstrated that there is a genuine issue of material fact as to disparate impact which, while enough survive summary judgment on a Title VII claim, is not enough to avoid summary judgment on a § 1981 claim. While plaintiff has produced evidence of intentional discrimination on the basis of a disability, § 1981 covers only racial discrimination. *Cf. Anjelino v. New York Times*, 200 F.3d 73, 98 (3d Cir.1999) (holding that Section 1981 does not apply to sex-based claims). Summary judgment will therefore be granted as to plaintiff's § 1981 claim.

### III. CONCLUSION

My careful review of the law and the facts of this case reveals that there remain genuine issues of material fact, and therefore some, but not all, of plaintiff's claims will survive summary judgment. For the reasons discussed above, summary judgment will be denied as to plaintiff's disparate treatment claim against the Bureau

the decision was made to place plaintiff on restricted duty. There is no evidence that Bunting, Bickta, or Corbett were involved in

under Title VII, and her § 1983 equal protection claim against Alfred Campbell.

the 1998 decision to place plaintiff on restricted duty.