Amanda **MOORE**, Plaintiff,

v.

**PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS and Pennsylvania Army National Guard, Defendants.**

**CIVIL ACTION NO. 01–6241.**

United States District Court,
E.D. Pennsylvania.

Aug. 26, 2002.

Nina B. Shapiro, Lancaster, PA, for Plaintiff.

Beth Anne Smith, Philadelphia, PA, for Defendant.

***MEMORANDUM AND ORDER***

DuBOIS, District Judge.

***MEMORANDUM***

This matter is before the Court on Defendant Pennsylvania Department of Military and Veterans Affairs' Motion to Dismiss Plaintiff's Complaint. For the reasons which follow, the Court will grant the Motion. Plaintiff's Title VII claim against both defendants will be dismissed without prejudice to plaintiff's right to file an amended complaint in conformity with this Memorandum if warranted by the facts;[1] plaintiff's claim under the Pennsylvania Human Relations Act against the moving defendant will be dismissed with prejudice.

## I. *BACKGROUND*

The case arises out of plaintiff's application for part-time employment in the Pennsylvania Army National Guard. On September 28, 1999, Sergeant Andrew Funk, a recruiter for the Pennsylvania Army National Guard, interviewed plaintiff for such a position. Complaint, ¶ 13. Sergeant Funk, dressed in full uniform, began the interview at a public restaurant, and "explained to plaintiff the military entrance procedures, compensation, benefits, tuition reimbursement, and description of service assignments." *Id.*, ¶ 14. He continued the interview at a tavern, where he allegedly purchased alcoholic beverages for plaintiff, who was younger than the legal drinking age. *Id.*, ¶ 15–16. According to the Complaint, plaintiff left the tavern at midnight. *Id.*, ¶ 17. Sergeant Funk followed her out of the tavern and then sexually assaulted her in the parking lot of the tavern. *Id.* ¶ 18. Sergeant Funk pled guilty to furnishing alcohol to a minor, and the National Guard discharged him from service. *Id.* ¶ 20–21.

Plaintiff brought suit against moving defendant, Pennsylvania Department of Military and Veterans Affairs ("PDMVA"), and the Pennsylvania Army National Guard. The Pennsylvania Army National Guard has not responded to the Complaint. In the Complaint, plaintiff asserts claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. 951 *et seq.*

## II. *DISCUSSION*

Defendant PDMVA moves to dismiss plaintiff's Title VII claim on the following grounds:

1. Plaintiff failed to plead an agency relationship between moving defendant and Sergeant Funk;
2. Plaintiff failed to allege that Sergeant Funk made sex a condition of employment; and,
3. Title VII does not afford protection to uniformed personnel of the armed forces.

The motion to dismiss plaintiff's claim under the Pennsylvania Human Relations Act is based on sovereign immunity under the Eleventh Amendment. The Court will address these arguments in turn.

### A. *Claim Under Title VII*

1. Theory of Sexual Harassment

Plaintiff does not identify the Title VII theory on which she bases her claim. Thus, the Court will consider the two types of Title VII claims which might arguably be raised by plaintiff's allegations—

1. Plaintiff filed a response to the Motion to Dismiss and appended to it a Motion to Amend Pleading. Because the Court concludes that the proposed amended pleading of the plaintiff is insufficient as a matter of law, plaintiff's Motion to Amend Pleading will be denied without prejudice.

claims of hostile work environment and a *quid pro quo* claim of sexual harassment under Title VII.

The elements of a prima facie case of hostile work environment sexual harassment under Title VII are: " '(1) the employee suffered intentional discrimination [in a work environment] because of [his or her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability.' " *Bonenberger v. Plymouth Township,* 132 F.3d 20, 25 (3d Cir.1997) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990)). Any such claim under Title VII must fail because plaintiff was not at the time of the alleged assault an employee and thus could not have been exposed to a hostile workplace.

With respect to a claim of *quid pro quo* sexual harassment, the Third Circuit has held that:

> unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature constitute [*quid pro quo*] sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

*Id.* at 27 (internal quotation omitted). Those elements were modified by *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), to require an actual change in employment conditions in cases where a plaintiff refused to submit to advances. The Third Circuit thereafter held that "to prove a claim of *quid pro quo* sexual harassment, a plaintiff must demonstrate either that she submitted to the sexual advances of her alleged harasser or suffered a tangible employment action as a result of her refusal to submit to those sexual advances." *Hurley v. Atlantic City Police Dep't,* 174 F.3d 95, 133 (3d Cir.), *cert. denied,* 528 U.S. 1074, 120 S.Ct. 786, 145 L.Ed.2d 663 (2000) (citing *Newton v. Cadwell Labs.,* 156 F.3d 880, 883 (8th Cir.1998); *Ponticelli v. Zurich American Ins. Group,* 16 F.Supp.2d 414, 428 (S.D.N.Y.1998)).

Neither plaintiff's original Complaint nor her proposed amended complaint allege that Sergeant Funk explicitly or impliedly made sex a condition of her employment. Neither the original Complaint nor the proposed amended complaint allege the details of the claimed agency relationship. The absence of these essential elements of a Title VII claim necessitates dismissal of the Complaint, although the Court will grant plaintiff leave to file an amended complaint in conformity with this Memorandum if warranted by the facts.

2. Applicability of Title VII to Plaintiff

There is a separate issue relating to Title VII on which plaintiff's Complaint is lacking. Plaintiff fails to allege in the Complaint the nature of the position for which she was applying. The question of whether plaintiff may proceed under Title VII depends, in part, on the position in the National Guard for which she applied.

*a. Plaintiff's Potential Status*

"[T]he National Guard is a state agency, under state authority and control [with its] activity, makeup, and function ... provided for, to a large extent, by federal law." *Johnson v. Orr,* 780 F.2d 386, 388 (3d Cir.1986) (quoting *New Jersey Air Nat'l Guard v. Fed. Labor Rel. Auth.,* 677 F.2d 276, 278–79 (3d Cir.1982)). It is staffed by military and civilian personnel. *Jorden v.*

*Nat'l Guard Bureau,* 799 F.2d 99, 101 (3d Cir.1986). The Court has identified two types of civilian personnel employed by the Guard: hybrid (dual-status) employees and purely civilian employees.[2] *Taylor v. Jones,* 653 F.2d 1193, 1199 (8th Cir.1981). Purely civilian employees are those persons who work in positions that do not require membership in the National Guard; they are state employees. *Id.* Unlike purely civilian employees, hybrid employees, or National Guard technicians, hold dual civilian and military positions. These employees are hired "to perform a wide range of administrative, clerical, and technical tasks within a military context." *Urie v. Roche,* 209 F.Supp.2d 412, 415 (D.N.J.2002) (Rodriguez, J.). The National Guard Technicians Act, 32 U.S.C. § 709, which codifies the nature of this position and classifies National Guard technicians as federal employees, requires that these employees serve as members of the National Guard and hold the military grade specified for the civilian position. *Id.* § 709(b).

*b. Effect of Plaintiff's Potential Status on her Entitlement to Title VII Protection*

■ The Supreme Court has repeatedly emphasized the special status of the military in our judicial system. *See, e.g., Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In *Chappell,* the Court applied the doctrine of intramilitary immunity first announced in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), to bar enlisted military personnel from maintaining lawsuits to recover damages from a superior officer for alleged constitutional violations.[3] *Id.* at 305, 103 S.Ct. 2362. "The special status of the military has required, the Constitution has contemplated, Congress has created, and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel." *Id.* at 303–304, 103 S.Ct. 2362 (citation omitted). "The special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel, would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command." *Id.* at 304, 103 S.Ct. 2362.

In addition to the unique disciplinary structure of the military establishment, the Court found another "special factor" dictated "that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Id.* (citation omitted). The Constitution vests Congress plenary authority over the military, and, in exercising that authority, Congress has established statutes regulating military life and provided for a comprehensive internal system of

2. The Court assumes for purposes of this motion, based on *Taylor,* that the Pennsylvania National Guard employs persons who work in purely civilian jobs. *Taylor* involved the Arkansas National Guard. *See id.* at 1199.

3. In *Feres,* the court held that "members of the armed forces may not bring an action against the Government or armed service personnel for injuries during activity under the control or supervision of a commanding officer." *Hodge v. Dalton,* 107 F.3d 705, 710 (9th Cir.1997) (citing *McGowan v. Scoggins,* 890 F.2d 128, 132 (9th Cir.1989)). This doctrine of intramilitary immunity is "applicable whenever a legal action 'would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States.' " *Id.* (quoting *McGowan,* 890 F.2d at 132 (citing *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 3042–43, 87 L.Ed.2d 38 (1985)); citing *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (applying intramilitary immunity doctrine to both a *Bivens* action and a claim under 42 U.S.C. § 1985)).

justice which furnishes a review and remedy for complaints and grievances of uniformed members of the armed forces. *Id.* at 301–03, 103 S.Ct. 2362. Because Congress, in its exercise of its plenary authority over military life, did not provide enlisted military personnel with a *Bivens*-type remedy, the Court reasoned that "[a]ny action to provide a judicial response by way of [a *Bivens*-type] remedy would be plainly inconsistent with Congress' authority in this field." *Id.* at 304, 103 S.Ct. 2362.

Consistent with the reasoning in *Chappell,* courts have consistently refused to extend statutory remedies available to civilians (such as Title VII) to uniformed members of the armed forces absent a clear direction from Congress to do so. Thus, while Title VII specifically prohibits military departments from engaging in acts of employment discrimination, *see* 42 U.S.C. § 2000e–16(a),[4] the statute has been construed by all circuits to have addressed the issue as providing a remedy for civilian employees of military departments but not to uniformed members of the armed forces:

> There is no question that Congress intended for [this section] to afford protection against discrimination to civilian employees and applicants for civilian employment in the Departments of the Army, Navy and Air Force. But we think that if Congress had intended for the statute to apply to the uniformed personnel of the various armed services it would have said so in unmistakable terms. We agree ... that neither Title VII nor its standards are applicable to persons who enlist or apply for enlistment in any of the armed forces of the United States.

*Johnson v. Alexander,* 572 F.2d 1219, 1224 (8th Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978); *accord Gonzalez v. Dep't of Army,* 718 F.2d 926, 927–28 (9th Cir.1983) (holding that the term "military departments" in § 2000e–16(a) "include[s] only civilian employees of the Army, Navy, and Air Force and not both civilian employees and enlisted personnel ..."); *Randall v. United States,* 95 F.3d 339, 343 (4th Cir.) ("... Congress intended to include only civilian employees of the military departments, and not uniformed service members, within the reach of Title VII."), *cert. denied,* 519 U.S. 1150, 117 S.Ct. 1085, 137 L.Ed.2d 219 (1997); *Roper v. Dep't of Army,* 832 F.2d 247, 248 (2d Cir.1987) (refusing to extend Title VII protection to uniformed members of the armed forces "[i]n the absence of some express indication in the legislative history that Congress intended" as such); *cf. Doe v. Garrett,* 903 F.2d 1455, 1461 (11th Cir.) (barring naval reserve member's Rehabilitation Act claim that his release from active-duty military was due to discrimination based on his handicap), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991).

Those courts recognize that the term "military departments" used in 42 U.S.C. § 2000e–16(a) is not interchangeable with the term "armed forces." As defined by Congress in 5 U.S.C. § 102, the term "military departments" includes the Department of the Army, the Department of the Navy, and the Department of the Air Force. *Id.* § 102. By contrast, the term "armed forces," as defined by Congress in 10 U.S.C. § 101(a)(7), includes "the Army, Navy, Air Force, Marine Corps, and Coast Guard." *Id.* § 101(a)(7). The courts have thus construed the term "military departments" to only include civilian employees of the Army, Navy, or Air Force, while

4. "All personnel actions affecting employees or applicants for employment ... in military departments as defined in Section 102 of Title 5 ... shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a).

construing the term "armed forces" as only referring to uniformed military personnel. In *Gonzalez*, relying on the legislative history of the statute, the court explained that "[t]he two differing definitions show that Congress intended a distinction between 'military departments' and 'armed forces,' the former consisting of civilian employees, the latter of uniformed military personnel." 718 F.2d at 928 (citation omitted).

Although the Third Circuit has not considered the scope of this provision as it applies to employees of military departments, this Court concludes that Title VII provides a remedy for civilian employees of military departments but not members of the armed forces.

Courts of appeals have declared that Title VII provides the same immunity from suit by enlisted personnel or applicants for enlistment in the National Guard that is provided to federal armed forces:

> We have previously held that "neither Title VII nor its standards are applicable to persons who enlist or apply for enlistment in any of the Armed Forces of the United States." *Johnson v. Alexander*, 572 F.2d 1219, 1224 (8th Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978). We do not see any significant distinction, for Title VII purposes, between a member of the Army or Air Force and a member of the reserve component of those forces, the National Guard. In neither case is the relationship between the government and the member that of employer-employee; military service differs materially from civilian employment, whether public or private, and is not appropriately government by Title VII.

*Taylor v. Jones*, 653 F.2d 1193, 1200 (8th Cir.1981) (citing *Johnson*, 572 F.2d at 1223–24); *accord Stinson v. Hornsby*, 821 F.2d 1537, 1539 (11th Cir.1987) (characterizing a full-time uniformed member of the Alabama National Guard as "military personnel," rather than state employee, which rendered Title VII inapplicable). The Sixth Circuit has extended that line of cases to bar uniformed members of the Michigan National Guard from bringing suit under the Americans With Disabilities Act and Title V of the Rehabilitation Act. *Coffman v. State of Michigan*, 120 F.3d 57, 58–59 (6th Cir.1997). The foregoing cases reflect "a consistent judicial interpretation that Congress did not intend to extend the protections of Title VII ... to members of the state National Guard ... because of a determination that, if Congress had intended to encroach upon the special status of the military in our system by extending these protections, it would have expressed its intention clearly."[5] *Frey v. State of California*, 982 F.2d 399, 404 (9th Cir. 1993).

The Court agrees with this authority and concludes that Title VII does not abrogate sovereign immunity for enlisted personnel and applicants for enlistment in the National Guard. Thus, if plaintiff sought to enlist as a uniformed member of the National Guard, her claim is barred by the doctrine of sovereign immunity. However, as recognized in the foregoing cases, Title VII applies to protect civilian employees in the National Guard from employment discrimination and thus, if plaintiff applied for civilian employment, she is entitled to claim the protection of Title VII. *See Taylor*, 653 F.2d at 1198–99.

5. The Court thus rejects plaintiff's reliance on *Kise v. Dep't of Military and Veterans Affairs*, 784 A.2d 253 (Pa.Commw.2001) in which the Commonwealth Court of Pennsylvania concluded that a member of the Active Guard/Reserve program was a State employee in the context of that member's petition to the court to review his involuntary separation from the program. *Id.* at 256.

Those cases do not resolve the question whether plaintiff can maintain a Title VII employment discrimination action if she applied for a job as a National Guard technician, a hybrid military-civilian job. The Third Circuit has not addressed the issue, and other circuits that have considered that issue have taken differing approaches. The Sixth Circuit views the protections of Title VII as unavailable to persons in hybrid positions because these positions are "irreducibly military in nature." *Fisher v. Peters,* 249 F.3d 433, 443 (6th Cir.2001) (ruling "Plaintiff's [Title VII] claim is non-justiciable because she is a National Guard technician and thus, her position is irreducibly military in nature."). Conversely, other circuits distinguish between the civilian and military aspects of a hybrid job (suggesting that a National Guard technician position is not inherently military) and instead focus on the nature of the challenged conduct. *Luckett v. Bure,* 290 F.3d 493, 499 (2d Cir.2002) (holding that "Title VII protections extend to discrimination actions brought by military personnel in hybrid jobs entailing both civilian and military aspects except when the challenged conduct is integrally related to the military's unique structure."); *Brown v. United States,* 227 F.3d 295, 299 (5th Cir.2000) (holding that "claims arising purely from a [dual-status employee's] civilian position are provided for under Title VII; claims that originate from [a dual status employee's] military status, however, are not cognizable."); *Mier v. Owens,* 57 F.3d 747, 750 (9th Cir. 1995) (holding that "Title VII coverage of civilians employed by the military encompasses actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure.").

At least one judge in this circuit, Judge Rodriguez, has addressed this issue. Judge Rodriguez construed National Guard technicians as " 'irreducibly military' federal employees," and dismissed plaintiff's Title VII damages claims arising from alleged discrimination and harassment by an individual who served as both her civilian and military supervisor and other claims arising from alleged discrimination by plaintiff's co-workers as barred by "the doctrine of intramilitary immunity, first articulated in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950)." *Urie,* 209 F.Supp.2d at 414–15. In reaching this decision, Judge Rodriguez relied on "the tendency in other circuits to expand the doctrine of intramilitary immunity to Title VII cases brought by National Guard technicians" and this circuit's holding in *Jorden* "extend[ing] *Chappell's* prohibition of damages actions against federal military officers for violation of constitutional rights to section 1983 damages claims against State military officers—those in the National Guard." *Id.* at 417 (citing *Jorden,* 799 F.2d at 107).

Plaintiff does not allege in the Complaint the nature of the position for which she was applying. Accordingly, the Court is unable to determine whether she was applying for a hybrid position and, if so, whether it was military in nature, in which event the Title VII claim would be barred, or civilian in nature and allowed to proceed.[6] For those reasons, the Court will dismiss the Complaint without preju-

6. If plaintiff applied for a position as a National Guard technician, the Court questions, but does not decide, whether PDMVA and the Pennsylvania Army National Guard are proper party defendants under 42 U.S.C. § 2000e–16(c). *See James v. Day,* 646 F.Supp. 239 (D.Me.1986) (holding that the only proper party defendant in a case brought by an applicant for federal civilian employment as a National Guard technician is the head of the department, agency or unit with which plaintiff sought employment) (citing 42 U.S.C. § 2000e–16(c)).

dice to plaintiff's right to file a more specific amended complaint in accordance with this Memorandum if warranted by the facts.

### B. *Claim Under PHRA*

PDMVA moves for a dismissal of plaintiff's PHRA claim on the ground that it is barred by sovereign immunity. For the reasons that follow, the Court agrees with moving defendant and the PHRA claim against moving defendant will be dismissed with prejudice.

The applicability of the doctrine of sovereign immunity to a PHRA claim has not been decided by the Third Circuit. However, the issue was recently addressed by Judge Reed of this Court in *Williams v. Pennsylvania State Police Bureau of Liquor Control Enforcement,* 108 F.Supp.2d 460, 465 (E.D.Pa.2000), as follows:

> While the PHRA has been held to waive Pennsylvania's immunity from suit in state court ... that waiver does not subject Pennsylvania to a PHRA suit in *federal* court ... Indeed, Pennsylvania law, 42 Pa.C.S.A. § 8521(b), is quite explicit on this point: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the United States." Thus, a plaintiff may never pursue a PHRA claim against Pennsylvania or its agencies in federal court.

(internal citations omitted). Other courts have reached the same conclusion. *See Demyun v. Pennsylvania Dep't of Corrections,* No. 300CV155, 2001 WL 1083936, *4 (M.D.Pa. Sept.14, 2001); *Fitzpatrick v. Commonwealth of Pennsylvania Dep't of Transp.,* 40 F.Supp.2d 631, 635 (E.D.Pa. 1999); *Dill v. Commonwealth of Pennsylvania,* 3 F.Supp.2d 583, 587–88 (E.D.Pa. 1998). This Court concurs in Judge Reed's analysis: a Pennsylvania state agency such as PDMVA is immune from suit under the PHRA in federal court.

Plaintiff's claim against PDMVA under the PHRA will thus be dismissed with prejudice on the ground of sovereign immunity. This dismissal is based on plaintiff's statement in the Complaint that PDMVA is a state agency. Complaint at ¶ 9. Because the Pennsylvania Army National Guard is an agency with both state and federal components, the analysis of its possible immunity from suit under the PHRA is a different one. The Court will not rule on plaintiff's claim under the PHRA against non-moving defendant Pennsylvania Army National Guard on the present state of the record.

## III. *CONCLUSION*

As noted at the beginning of this Memorandum, the Pennsylvania Army National Guard is separately named as a defendant but has not yet entered an appearance. Nevertheless, because the conclusion of the Court with respect to the Title VII claim applies equally to the Pennsylvania Army National Guard and to moving defendant, the Court will dismiss plaintiff's Title VII claims against both defendants with leave to amend in accordance with this Memorandum if warranted by the facts. For the reasons stated above, plaintiff's claim against moving defendant under the PHRA will be dismissed with prejudice. The Court does not address plaintiff's PHRA claim against defendant, Pennsylvania Army National Guard, on the present state of the record.

## *ORDER*

**AND NOW,** this 26th day of August, 2002, upon consideration of Defendant Pennsylvania Department of Military and Veterans Affairs' Motion to Dismiss Plaintiff's Complaint (Document No. 3, filed

April 24, 2002), and Plaintiff's Response in Opposition to Pennsylvania Department of Military and Veterans Affairs' Motion to Dismiss and Plaintiff's Motion to Amend Pleading (Document No. 4, filed May 10, 2002), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Defendant Pennsylvania Department of Military and Veterans Affairs' Motion to Dismiss Plaintiff's Complaint is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion is **GRANTED** with respect to plaintiff's claims in Count One of the Complaint under Title VII and all such claims against the Pennsylvania Department of Military and Veterans Affairs are **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to file an amended complaint within twenty (20) days of the date hereof in accordance with the attached Memorandum if warranted by the facts; and,

2. The Motion is **GRANTED** with respect to plaintiff's claims under the Pennsylvania Human Relations Act and all such claims against the Pennsylvania Department of Military and Veterans Affairs are **DISMISSED WITH PREJUDICE.**

3. In all other respects, the Motion is **DENIED.**

**IT IS FURTHER ORDERED** that, for the reasons set forth in the attached Memorandum, plaintiff's claims against the Pennsylvania Army National Guard under Title VII are **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to file an amended complaint within twenty (20) days of the date hereof in accordance with the attached Memorandum if warranted by the facts.

**IT IS FURTHER ORDERED** that, for the reasons set forth in the attached Memorandum, plaintiff's Motion to Amend Pleading is **DENIED WITHOUT PREJUDICE** to plaintiff's right to proceed in accordance with this Memorandum.

**IT IS FURTHER ORDERED** that defendant, Pennsylvania Army National Guard, shall file and serve a response to the Complaint within 20 days. If plaintiff files an amended complaint in accordance with this Memorandum, defendant, Pennsylvania Army National Guard, shall also file and serve a response to the amended complaint within 20 days of service of a copy of the amended complaint. One (1) copy of such response(s) shall be served on the Court (Chambers, Room 12613) when the original(s) is filed.