George **KOSLOW**

v.

**COMMONWEALTH OF PENNSYLVANIA,**
**et al.**

**No. CIV. A. 97–5951.**

United States District Court,
E.D. Pennsylvania.

May 31, 2001.

Order Vacating Order June 5, 2001.

Order Denying Reconsideration
July 31, 2001.

Thomas M. Holland, Jeffrey Campolongo, Law Offices of Thomas More Holland, Philadelphia, PA, for George Koslow, Plaintiff.

Claudia M. Tesoro, Office of Attorney General, Philadelphia, PA, for Commonwealth of Pennsylvania d/b/a Department of Corrections, Defendant.

## MEMORANDUM AND ORDER

FULLAM, Senior District Judge.

This action arises under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act (PHRA), 42 Pa. Cons.Stat. Ann. § 951 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* The plaintiff is George Koslow, formerly employed as a water treatment plant supervisor at the State Correctional Institution at Graterford. He was injured on the job and claims that defendants refused to accommodate his disability. Defendants are the Commonwealth of Pennsylvania and SCI Graterford Superintendent Donald T. Vaughn (collectively, "the Commonwealth defendants"), PHICO Services Company (Graterford's former worker's compensation administrator) and CompServices, Inc. (the current administrator). Proceedings in this case were stayed pending the decision of the United States Supreme Court in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). In *Garrett*, the Court held that Congress had not validly abrogated states' 11th Amendment immunity in passing Title I of the ADA. By Order dated March 8th, I asked the parties to brief the 11th Amendment issue. All defendants seek summary judgment on the basis of sovereign immunity; in addition, PHICO and CompServices have moved for summary judgment on the grounds that they had no decision-making role with regard to plaintiff, nor were they involved in any allegedly discriminatory acts. For the reasons that follow, I conclude that summary judgment in favor of the defendants is appropriate.

■■ **ADA claims against the Commonwealth.** Plaintiff makes much of the fact that he is pursuing a claim under Title II of the ADA, as well as Title I. Title II, which applies only to "public entities,"

deals with public accommodations and services; Title I deals with employment. Although the circuits are divided on this issue—and both the Supreme Court in *Garrett* and the United States Court of Appeals for the Third Circuit in *Lavia v. Commonwealth of Pennsylvania*, 224 F.3d 190, 194 n. 2 (3d Cir.2000), have avoided it—I am convinced that Congress intended Title I to be the sole avenue for pursuing employment discrimination claims based on disability. Title I expressly deals with employment discrimination, while Title II deals with "services, programs, or activities of a public entity," 42 U.S.C. § 12132, and "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *See Garrett*, 531 U.S. at —— n.1, 121 S.Ct. at 960 n. 1 (*quoting Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Moreover, I conclude that the reasoning of the Third Circuit in *Lavia* and the Supreme Court in *Garrett* apply with equal force to Title II, and that Congress did not validly abrogate states' immunity when it passed this legislation. *See Moyer v. Conti*, C.A. No. 99–744, 2000 WL 1478791 (E.D.Pa. Oct. 5, 2000), *appeal docketed*, No. 00–2886 (3d Cir. Oct. 3, 2000).

■The question remains whether plaintiff may still have a viable ADA claim against the Commonwealth via an action against the individual defendant, Superintendent Vaughn, pursuant to *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In a footnote to its opinion in *Garrett*, the Supreme Court stated:

> Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individu-

als for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*. In addition, state laws protecting the rights of persons with disabilities in employment and other aspects of life provide independent avenues of redress.

*Garrett*, 531 U.S. at —— n.9, 121 S.Ct. at 968 n. 9 (citation omitted). Since plaintiff also seeks prospective injunctive relief—reinstatement—he believes that he can maintain an *Ex parte Young* action against defendant Vaughn. The Commonwealth, anticipating this argument, asserts that the footnote is *dicta*. More significant is the fact that even were I to read the Second Amended Complaint to plead an ADA claim explicitly against Superintendent Vaughn, there is no individual, or supervisor, liability under the ADA. *See Lantz v. Hospital of the Univ. of Pa.*, C.A. No. 96–2671, 1996 WL 442795, at *6 (E.D.Pa. July 30, 1996).

■ **PHRA claims against the Commonwealth.** It is well-settled that a *federal* court has no jurisdiction over PHRA claims against the Commonwealth. Plaintiff urges that I take supplemental jurisdiction over his PHRA claims; I cannot. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 120–21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.").

■ **Plaintiff's claims against the Commonwealth pursuant to § 504 of the Rehabilitation Act.** Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), pro-

hibits discrimination on the basis of disability in programs receiving federal funding. In *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), the Supreme Court held that Congress had not validly abrogated the states' 11th Amendment immunity when it enacted § 504. Congress thereafter attempted to override *Atascadero* by passing the following:

A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, and Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provision of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d–7(a)(1). Congress therefore has satisfied the first requirement of the test for a valid abrogation of states' immunity: it has unequivocally expressed its intent to do so. The second part of the test, however, is "congruence and proportionality"—that is, whether Congress has identified a "pattern of discrimination by the States which violates the Fourteenth Amendment, and [whether] the remedy imposed by Congress ... is congruent and proportional to the targeted violation." *Garrett,* 531 U.S. at ——, 121 S.Ct. at 967–68. No specific unconstitutional conduct by the states was identified by Congress, and therefore § 504 must fall victim to the same fate that has lately befallen other antidiscrimination statutes insofar as they are applied to the states. *Cf. Garrett, supra* (ADA); *Chittister v. Department of Cmty. & Econ. Dev.,* 226 F.3d 223 (3d Cir.2000)(FMLA); *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)(RFRA); *Kimel v. Florida Bd. of Regents,* 528 U.S.

62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)(ADEA), etc.

■ The only way that plaintiff can assert a claim under § 504, then, is if the Commonwealth of Pennsylvania has waived its sovereign immunity. It clearly has not done so explicitly, as there is no legislation that can be so construed. In order for Pennsylvania to have implicitly waived its immunity by accepting federal funds, the conditions on the grant of money must be unambiguously expressed by Congress. *See Pennhurst,* 451 U.S. at 17, 101 S.Ct. 1531. Congress must also be specific; a "general authorization" does not suffice. *See Atascadero,* 473 U.S. at 246, 105 S.Ct. 3142. In *Atascadero,* the Court held that § 504 fell "far short of manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." *Id.* at 247, 105 S.Ct. 3142. The Commonwealth asserts that the passage of 42 U.S.C. § 2000d–7(a) did not change anything, as it is nothing if not a "general authorization."

One of the few cases dealing with § 504 that focuses on Spending Clause-related waiver (rather than Congressional abrogation) of 11th Amendment immunity is *Jim C. v. United States,* 235 F.3d 1079 (8th Cir.2000)(*en banc* ), *cert. petition filed,* —— U.S. ——, 121 S.Ct. 2591, 150 L.Ed.2d 750, 69 U.S.L.W. 3646 (Mar. 22, 2001). In *Jim. C.,* the parents of an autistic child sued the Arkansas Department of Education, alleging that defendant had failed to comply with the requirements of § 504. The Court of Appeals for the Eighth Circuit held that § 504 was a valid exercise of Congress' spending power, and that the conditions placed on a state's receipt of federal funds were not unduly coercive:

... Congress may require a waiver of state sovereign immunity as a condition

for receiving federal funds, even though Congress could not order the waiver directly. While it appears, as the defendant urges, that the "financial inducements" employed by Congress can become so "coercive as to the cross the point where 'pressure turns into compulsion,'" that limit has not been crossed here.

*Jim C.,* 235 F.3d at 1081 (citations omitted). The court also held that a state only waives its sovereign immunity with regard to those departments or agencies that receive federal funds, and therefore that it "can avoid Section 504's waiver requirement on a piecemeal basis." *See id.*

■ The dissent makes two salient points: first, on the question of coercion, it notes that the federal funding received by the Arkansas Department of Education is so substantial—$250,000,000—that it "could not easily be replaced," leading to the "conclusion that pressure has turned into compulsion and that the waiver given by the State is therefore unenforceable." *Id.* at 1083. Second, the dissent questions

> whether Congress, in the guise of Spending Clause legislation, can achieve indirectly what it cannot constitutionally achieve directly. That is, can Congress get its way by presenting the states with the Hobson's choice of either waiving their Eleventh Amendment immunity from § 504 claims or foregoing all federal funds to support various traditional state activities such as education, highways, and the like?

*Id.* The dissent goes on to conclude that "the proper way to limit the Spending Clause (besides applying the coercion test) is to require, among other things, that any conditions placed on federal grants to the states be related 'to the federal interest in particular national projects or programs.'" *Id.* at 1084 (*quoting South Dakota v. Dole,* 483 U.S. 203, 207, 107 S.Ct. 2793, 97

L.Ed.2d 171 (1987)), and that there was no discernible relationship between Arkansas' receipt of grant money for education and the purposes of the Rehabilitation Act. In other words, the *Jim C.* dissent would require a nexus between the purposes of the federal funding and the conditions placed on their receipt. I agree that this is the more reasoned approach. As plaintiff does not argue that there is any connection between federal funds received by the state and his Rehabilitation Act claim, I hold that the Commonwealth of Pennsylvania has not waived its sovereign immunity in this case.

■ **Plaintiff's claims against PHICO and CompServices.** CompServices and PHICO reiterate the earlier assertion, raised in PHICO's second motion to dismiss, that because they are merely agents of the state, which enjoys 11th Amendment immunity, they are likewise immune. Their arguments are based on the traditional concept of agency law that if the principal has no liability, neither does his agent. However, as I noted in an earlier opinion in this case, the ADA defines "employer" to include an "any agent" of the employer. As written, the statute confers upon private entities independent "employer" status, and therefore they can be liable even if the state is immune, if plaintiff shows that they "participated in the decision-making process that forms the basis of the discrimination." *Lantz,* 1996 WL at *7.

■ Unfortunately for plaintiff, the evidence in this case reveals that neither PHICO nor CompServices had any decision-making authority whatsoever with regard to his employment. They did not fire plaintiff or refuse him an accommodation. PHICO ceased to be involved in any way after December 1997, and it is not at all clear that plaintiff is complaining about anything that occurred during PHICO's

tenure. The only act attributable to CompServices is its referral of plaintiff for an independent medical examination, which concluded that he was able to return to work, at least on a limited basis. Plaintiff apparently contends that his actual return to work was unduly delayed (from June to September 1999), but there is no evidence that CompServices caused the delay. Even if it had, it is ludicrous to suppose that by furnishing to the Commonwealth defendants the information that plaintiff was fit to return to work, Comp-Services was discriminating against him on the basis of his disability. In short, both PHICO and CompServices were merely conduits for the information and paperwork incident to the administration of a workers' compensation claim, and are entitled to summary judgment on plaintiff's ADA claims.

Plaintiff's PHRA claim against Comp-Services must also fail, for the reasons expressed in this Court's Memorandum and Order dated July 13, 2000 (dismissing the PHRA claim asserted against PHICO because the PHRA does not define "employer" to include an "agent" thereof). An Order follows.

### ORDER

AND NOW, this 31st day of May, 2001, IT IS ORDERED:

1. The motion for summary judgment of defendants the Commonwealth of Pennsylvania and Donald T. Vaughn is GRANTED.

2. The motion for summary judgment of defendant PHICO Services Company is GRANTED.

3. The motion for summary judgment of defendant CompServices, Inc. is GRANTED.

4. Judgment is entered against plaintiff and in favor of all defendants.

### ORDER

AND NOW, this 5th day of June, 2001, IT IS ORDERED:

1. This Court's Order dated May 31, 2001 is VACATED.

2. Plaintiff's claims against the Commonwealth of Pennsylvania and Donald T. Vaughn are DISMISSED for lack of subject matter jurisdiction.

3. The motions for summary judgment filed by defendants PHICO Services Company and CompServices, Inc. are GRANTED.

4. Judgment is entered in favor of defendants PHICO Services Company and CompServices, Inc., and against the plaintiff.

5. The Clerk of Court is directed to close this file.

### MEMORANDUM AND ORDER

Plaintiff, formerly employed as a water treatment plant supervisor at the State Correctional Institution at Graterford, brought this employment discrimination action against the Commonwealth of Pennsylvania, Graterford Superintendent Donald T. Vaughn, and Graterford's current and former worker's compensation administrators, CompServices, Inc. and PHICO Services Company. By Memorandum and Order dated May 31, 2001 (as amended by Order dated June 5, 2001), I dismissed plaintiff's claims against defendants the Commonwealth of Pennsylvania and Donald T. Vaughn for lack of subject matter jurisdiction, having concluded, *inter alia*, that plaintiff's claims against these defendants pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, were barred by the Eleventh Amendment. I also granted summary

judgment in favor of PHICO and Comp-Services.

Plaintiff has moved for reconsideration, apparently based solely on his disagreement with my interpretation of the law. Plaintiff urges that I reconsider my holding that he may not maintain an *Ex parte Young* action for injunctive relief against defendant Vaughn in his official capacity as Superintendent of Graterford, given that there was no evidence of any action with regard to plaintiff—unconstitutional or otherwise—taken by this defendant. I specifically addressed this issue:

> The question remains whether plaintiff may still have a viable ADA claim against the Commonwealth via an action against the individual defendant, Superintendent Vaughn, pursuant to *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In a footnote to its opinion in *Garrett*, the Supreme Court stated:
>
> > Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*. In addition, state laws protecting the rights of persons with disabilities in employment and other aspects of life provide independent avenues of redress.
>
> *Garrett*, 531 U.S. at — n.9, 121 S.Ct. at 968 n. 9 (citation omitted). Since plaintiff also seeks prospective injunctive relief—reinstatement—he believes that he can maintain an *Ex parte Young* action

against defendant Vaughn. The Commonwealth, anticipating this argument, asserts that the footnote is *dicta*. More significant is the fact that even were I to read the Second Amended Complaint to plead an ADA claim explicitly against Superintendent Vaughn, there is no individual, or supervisor, liability under the ADA. *See Lantz v. Hospital of the Univ. of Pa.*, C.A. No. 96–2671, 1996 WL 442795, at *6 (E.D.Pa. July 30, 1996).

*Koslow v. Commonwealth of Pa.*, C.A. No. 97–5951, slip op. at 3, — F.Supp.3d —, —, 2001 WL 915246 (E.D.Pa. May 31, 2001). Moreover, I held that Title II of the ADA has no application to employment discrimination claims based on disability in the first instance. *See id.* at — – —, slip. op. at 2–3. I recognize that my colleague Judge Schiller recently reached the opposite conclusion in *Frederick v. Department of Public Welfare*, 157 F.Supp.2d 509, — – —, slip op. at 34–35 (E.D.Pa. 2001), and that the issue is by no means free from doubt. Its ultimate resolution, however, is properly within the purview of the Court of Appeals.

An Order follows.

### ORDER

AND NOW, this 31st day of July, 2001, IT IS ORDERED that plaintiff's motion for reconsideration is DENIED.