Martin NELSON, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, et al., Defendants.

No. CIV.A. 99–CV–5508.

United States District Court, E.D. Pennsylvania.

Dec. 9, 2002.

Thomas M. Holland, Philadelphia, PA, for Plaintiff.

Theodore E. Lorenz, Office of Attorney General, Philadelphia, PA, for Defendants.

### EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

On November 5, 1999, Martin Nelson filed suit against the Commonwealth of Pennsylvania, Department of Public Welfare/County Board of Assistance ("DPW")

and Feather Houston, Secretary of the DPW. Defendant DPW is a state agency that provides cash assistance, food stamps, and social services to Pennsylvania residents. Plaintiff is a legally blind individual who has worked at the DPW since 1970. Plaintiff claims that throughout his employment defendants have repeatedly failed to provide him with reasonable accommodations in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 953 *et seq.* He has also filed suit under 42 U.S.C. § 1983.

Plaintiff's suit arises from the following facts: plaintiff is an Income Maintenance Case Worker who has consistently received favorable work evaluations from his supervisors at the DPW. While working, he uses the aide of a part-time reader in order to be more efficient. Plaintiff must compensate his aide directly and then await reimbursement from the DPW, an arrangement that he argues causes him to suffer a tax burden as well as unwarranted out-of-pocket expenses. Plaintiff must also train and hire these aides without defendants' assistance. In addition to these alleged failures by the defendants to provide reasonable accommodation in the workplace, plaintiff also points to defendants' refusal to supply him with updated computer software. Without such software, plaintiff apparently cannot access his employer's current training policies, procedures, manuals, and computerized materials. His work is also allegedly impeded by defendants' decision not to provide him with training manuals and seminar materials in braille. Plaintiff asserts that this lack of access to professional materials has disadvantaged him vis-à-vis his sighted peers.

Plaintiff has filed suit under both federal and state law. He is seeking an array of damages as well as injunctive relief for defendants' allegedly unlawful discrimination and retaliation. In response, defendants have filed Motions to Dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Defendants maintain that plaintiff's suit is barred by the Eleventh Amendment to the U.S. Constitution and that plaintiff's complaint fails to state a claim upon which relief may be granted.

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion, the Court must accept as true all of the allegations set forth in the complaint and must draw all reasonable inferences in favor of the plaintiff. *See Ford v. Schering–Plough Corp.*, 145 F.3d 601, 604 (3d Cir.1998). Dismissal of plaintiff's claim is appropriate only if plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotations omitted). The court need not, however, accept conclusory allegations or legal conclusions. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997).

■ Defendants have also moved under Rule 12(b)(1), which allows the court to dismiss a suit for want of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). This motion permits a party to raise the issue of Eleventh Amendment immunity at the earliest stage of litigation. In *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir.1996), the Third Circuit Court of Appeal noted that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Id.* at 694 n. 2 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). The *Blanciak* court added that Rule 12(b)(1) was the proper means of raising the issue of whether the Eleventh Amend-

ment bars federal jurisdiction. *Id.* There are two types of Rule 12(b)(1) motions. The first type, a facial attack, challenges only the court's subject matter jurisdiction. The second type, a factual attack, allows the court to question the plaintiff's facts after the defendant files an answer. *See Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). As defendants have not filed an answer, their motion is necessarily a facial attack.

■ It is unclear what standard of review governs facial attacks made via Rule 12(b)(1) motions. The Third Circuit has "cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and reaching the merits of the claims" because "the standard for surviving a Rule 12(b)(1) motion is lower than that for a 12(b)(6) motion." *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 178 (3d Cir.2000) (citation omitted). Nonetheless, the Third Circuit has also held that, when considering a facial attack under Rule 12(b)(1), "the trial court must accept the complaint's allegations as true." *Turicentro, S.A. v. Am. Airlines Inc.,* 303 F.3d 293, 300 n. 4 (3d Cir.2002) (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.,* 239 F.3d 333, 341 n. 7 (3d Cir.2001)). Accordingly, when evaluating defendants' Rule 12(b)(1) motion, I will accept as true plaintiff's alleged facts. Moreover, since Rule 12(b)(1) has a more forgiving standard of review than that for Rule 12(b)(6), it logically follows that I should draw all reasonable inferences in the plaintiff's favor when considering a Rule 12(b)(1) motion.

## DISCUSSION

Plaintiff has filed a complaint listing six counts against defendants. Plaintiff's causes of action are premised on three federal statutes and two state law claims. The federal statutes are the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983. The state laws are the Pennsylvania Human Relations Act and the Pennsylvania common law action for Assumpsit. While the Commonwealth is a defendant in all six counts, Commissioner Houston is named only for those counts involving state law and § 1983.

In lieu of an Answer to plaintiff's Amended Complaint, defendants have made two motions to dismiss. Defendants' 12(b)(1) motion asserts that plaintiff lacks subject matter jurisdiction because the Eleventh Amendment completely bars his suit against the state and those state agents who are sued in their official capacity. Defendants' 12(b)(6) motion argues that if the court does have subject matter jurisdiction, then plaintiff's suit should be dismissed because it fails to state a claim. I shall address each motion separately.

## A. Rule 12(b)(1): Subject Matter Jurisdiction and the Eleventh Amendment

Defendants assert that plaintiff's claims are barred by the Eleventh Amendment.[1] Although the Eleventh Amendment does not expressly preclude suit by a state's own citizens, the Supreme Court has barred such claims based on the doctrine of state sovereign immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 669, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Alden v. Maine,* 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (noting that "the States' immunity from suit is a funda-

---

**1.** The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

mental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which they retain today").

█ Although the States thus enjoy general immunity from suit by private individuals regardless of where they reside, there are three exceptions to the Eleventh Amendment's prohibition of private lawsuits against the States. First, the States may waive their immunity and consent to be sued. *See Alden,* 527 U.S. at 755, 119 S.Ct. 2240. Second, Congress may abrogate the States' immunity so long as it "both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trs. of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Third, the federal courts can issue an injunction against a state officer if there is evidence of ongoing violations of federal law and the injunction will afford a plaintiff prospective relief from the illegal state action. *See Alden,* 527 U.S. at 757, 119 S.Ct. 2240; *Seminole Tribe v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *see also Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Plaintiff has responded to defendants' 12(b)(1) motion to dismiss by asserting that all three of these exceptions permit his suit to go forward. I shall consider defendants' motion by evaluating whether an exception applies to each law underlying plaintiff's claims.

*1. The ADA*

Plaintiff has filed suit under both Title I and Title II of the ADA.[2] The Supreme Court in *Board of Trustees of the University of Alabama v. Garrett* held that Congress did not validly abrogate the States' Eleventh Amendment immunity when it enacted Title I of the ADA. *Garrett,* 531 U.S. at 356–58, 121 S.Ct. 955. Shortly before the Court decided *Garrett,* the Third Circuit had reached the same conclusion in *Lavia v. Pennsylvania,* 224 F.3d 190 (3d Cir.2000). Thus it is now clear that a private plaintiff cannot sue the Commonwealth of Pennsylvania based on Title I of the ADA.

Neither *Garrett* nor *Lavia,* however, addressed whether Congress successfully abrogated state sovereign immunity when it passed Title II of the ADA. There is a split among the Circuit Courts on this issue. *See Popovich v. Cuyahoga County Ct. of Common Pleas,* 276 F.3d 808, 815 (6th Cir.2002) (en banc) (permitting plaintiff to sue the state under Title II when plaintiff alleged a due process violation, but not when he alleged an equal protection violation); *Kiman v. New Hampshire Dep't of Corr.,* 301 F.3d 13, 24 (1st Cir. 2002) (holding Congress validly abrogated the Eleventh Amendment insofar as Title II applies to cases involving a constitutional violation by the state); *Wessel v. Glendening,* 306 F.3d 203 (4th Cir.2002) (holding Congress did not validly abrogate the Eleventh Amendment when it enacted Title II); *Reickenbacker v. Foster,* 274 F.3d 974 (5th Cir.2001) (same); *Garcia v.*

---

**2.** Title I of the ADA protects those disabled individuals "who, with or without reasonable accommodation, can perform the essential functions of the employment position," 42 U.S.C. 12111(8), from discrimination in "the hiring, advancement, or discharge of employees, employment compensation, job training and other terms, conditions, and privileges of employment." Id. § 12112(a).

Title II of the ADA states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

*S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 112 (2d Cir.2001) (holding Title II exceeds Congress' authority to the extent that it authorizes suit against the States absent evidence of "discriminatory animus or ill will due to disability"); *Walker v. Snyder*, 213 F.3d 344 (7th Cir.2000) (holding Title II's abrogation invalid); *Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir.1999) (en banc) (same); *Dare v. California*, 191 F.3d 1167 (9th Cir.1999) (holding "that the ADA was a congruent and proportional exercise of Congress's enforcement powers . . . that abrogated Eleventh Amendment immunity"); *cf. Yeskey v. Pennsylvania Dep't of Corr.*, 118 F.3d 168 (3d Cir.1997) (holding state prisons could be sued under Title II).

■ Before weighing in on the contentious question of whether Title II validly abrogates state sovereign immunity, it is prudent to ask first whether plaintiff qualifies for relief under this provision of the ADA. Generally, Title I of the ADA deals with private and public employment while Title II covers access to public services. *See e.g., Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 166 n. 3 (3d Cir.2002). Thus, while plaintiff argues that his claim is governed by Title II, it seems questionable whether the employment discrimination that he complains of is prohibited by both Title I and Title II of the ADA. Addressing this same issue, another court within this jurisdiction has held that "Congress intended Title I to be the sole avenue for pursuing employment discrimination claims based on disability." *Koslow v. Commonwealth of Pennsylvania*, 158 F.Supp.2d 539, 542 (E.D.Pa.2001) (*aff'd in part, rev'd in part on different grounds by Koslow v. Commonwealth of*

*Pennsylvania*, 302 F.3d 161 (3d Cir.2002)). I agree. The Supreme Court has repeatedly noted that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Garrett*, 531 U.S. at 360 n. 1, 121 S.Ct. 955 (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).

The Third Circuit has applied a similar plain-language approach. In *Yeskey v. Pennsylvania Department of Corrections*, state prison officials denied an inmate admission to the facility's boot camp program because the prisoner had a physical disability. The inmate brought suit, alleging that his exclusion from the program violated Title II of the ADA. *Yeskey*, 118 F.3d at 169. Evaluating the plaintiff's claim, Chief Judge Becker held that, absent evidence of contrary Congressional intent, "a word in a statute must be given its 'ordinary or natural' meaning." *Id.* at 170 (quoting *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). In the Chief Judge's opinion, "the ordinary meanings of 'activity' and 'program' clearly encompass those that take place in prisons." *Id.* In this case, while the "services, programs, or activities" covered by Title II could also be construed to apply to employment, such is not their ordinary or natural meaning, nor is there any legislative history or caselaw that suggests otherwise.

■■ *Garrett* and *Yeskey* indicate that plaintiff has not presented evidence of a Title II violation.[3] Given that i) Congress

---

3. *Garrett* suggests that Congress did not intend for Title II to cover complaints of employment discrimination because Title I expressly provides for such violations and Title

II is silent on the subject. *Yeskey* further counsels against reading plaintiff's claims into the "activities" and "programs" covered by

expressly provided for employment discrimination in Title I, ii) Title II fails to mention employment, iii) the "services, programs, or activities" discussed in Title II are not common synonyms for employment, and iv) neither Congress nor the courts have equated employment with "services, programs, or activities" in this legal context, I cannot reasonably conclude that Title II was intended to provide a cause of action for victims of employment discrimination.[4] Plaintiff's claim is covered only by Title I. As the Supreme Court invalidated Title I's attempt to abrogate Eleventh Amendment immunity, a private party cannot sue a State under this section of the ADA absent evidence of a waiver by the State or a request for injunctive relief against a state officer. Plaintiff has neither offered such evidence nor made such a request. Accordingly, plaintiff's ADA claim is barred by the Eleventh Amendment.

### 2. Section 504 of the Rehabilitation Act

 Defendants maintain that the Eleventh Amendment also bars plaintiff's claims under § 504 of the Rehabilitation Act.[5] Plaintiff correctly contends that the State has waived its immunity from suit under this federal statute.

 Unlike the ADA, which Congress intended to apply generally to the States and private employers, § 504 of the Rehabilitation Act applies "only to those agencies or departments receiving federal funds, and § 504 applies only during the periods during which the funds are accepted." *Koslow v. Commonwealth of Pennsylvania,* 302 F.3d 161, 166 n. 3 (3d Cir. 2002). Accepting plaintiff's allegations as true, the DPW received federal funds and has done so during plaintiff's employment with the agency.

The DPW's receipt of federal funds is material to the discussion of whether it has Eleventh Amendment immunity because acceptance of these monies can constitute a waiver of immunity. The significance of the DPW's receipt of federal monies arises from the Third Circuit's holding that "if a state accepts federal funds for a specific department or agency, it voluntarily waives sovereign immunity for Rehabilitation Act claims against the department or agency-but only against that department or agency." *Koslow,* 302 F.3d at 171. As "the Rehabilitation Act's definition of 'program or activity' sweeps 'all the operations' of a department or agency receiving federal financial assistance under the Act's coverage," *Id.* (quoting 29 U.S.C. § 794(b)), the DPW has no wriggle room.[6] Plaintiff's claims under § 504 of the Rehabilitation Act are not barred by the Eleventh Amendment.

Title II because the ordinary meanings of these words do not include employment.

4. Moreover, it would be difficult to conclude that plaintiff could legitimately sue the DPW for an employment-related claim under Title II since the Supreme Court found in *Garrett* that Title I was constitutionally invalid because Congress had failed to present sufficient evidence of employment discrimination by the States against their disabled workers. *See Garrett,* 531 U.S. at 377, 121 S.Ct. 955.

5. Section 504 Provides: "No otherwise qualified individual with a disability … shall, sole-

ly by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. 794(a).

6. *See also Frederick L. v. Department of Public Welfare,* 157 F.Supp.2d 509, 523 (E.D.Pa. 2001) (holding that because Pennsylvania need not accept federal funds, "the DPW has had the option to avoid being governed by the mandates of section 504. The DPW got what it bargained for. It cannot now avoid its obligation.")

### 3. Section 1983

Both the DPW and Secretary Houston are named in Count VII of plaintiff's Amended Complaint, which alleges that the defendants are liable under 42 U.S.C. § 1983. Section 1983 provides that "persons" acting under color of state law can be found liable if they deprive others of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983. Plaintiff alleges that both defendants deprived him of a right, privilege, or immunity secured by the Constitution and/or federal law. While plaintiff makes the same claim against each defendant, the DPW and Secretary Houston are entitled to different defenses because of the Eleventh Amendment and the doctrine of *Ex Parte Young*.[7] For this reason I shall consider the § 1983 claims against each defendant in turn.

 Plaintiff cannot sue the DPW for a § 1983 violation because the Eleventh Amendment prohibits such suit. The Third Circuit has repeatedly held that state agencies like the DPW are "entitled to Eleventh Amendment immunity." *Mitchell v. Commission on Adult Entertainment Establishments*, 12 F.3d 406, 408 (3d Cir.1993) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Moreover, they are "immune from suit in a federal court without regard to the nature of the relief sought." *C.H. v. Oliva*, 226 F.3d 198, (3d Cir.2000) (en banc) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Since the Eleventh Amendment bars suit against state agencies, this court lacks jurisdiction to hear any § 1983 action against the DPW.

 The Eleventh Amendment does not, however, entirely bar plaintiff's § 1983 claim against Secretary Houston. The analysis under the Eleventh Amendment in a § 1983 suit is less straightforward when a state official is named as defendant. The Supreme Court has granted immunity to those state actors who are sued in their official capacity. *See Will*, 491 U.S. at 71, 109 S.Ct. 2304 ("A suit against a state officer in his or her official capacity ... is no different from a suit against the State itself."). This immunity is nonetheless limited, as it does not foreclose suit when a plaintiff seeks prospective, injunctive relief. *See Hindes v. F.D.I.C.*, 137 F.3d 148, 165 (3d Cir.1998) (citing *Quern v. Jordan*, 440 U.S. 332, 347–49, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir.1996) (citing *Young*, 209 U.S. at 166–68, 28 S.Ct. 441). The *Blanciak* court summarized the nature of the Eleventh Amendment immunity afforded to Secretary Houston: "relief that essentially serves to compensate a party injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment." *Id.* (citing *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) and *Edelman v. Jordan*, 415 U.S. 651, 664–668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Put another way, the "type of prospective relief permitted under *Young*

---

**7.** In *Ex Parte Young*, the Supreme Court held that the Eleventh Amendment did not bar a federal court from hearing an action to enjoin Minnesota's Attorney General from enforcing a state statute whose implementation allegedly violated the Fourteenth Amendment. The only relief that the Court permitted the plaintiffs, however, was prospective, injunctive relief. The Court explained this departure from the presumption of state immunity on the basis of its belief that an unconstitutional state enactment could not be "official or representative" since the underlying state authorization for these actions would be void under the Constitution. *Ex Parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

is relief intended to prevent a continuing violation of federal law." *Hindes*, 137 F.3d at 166 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)). Accordingly, plaintiff's claim—to the extent that it seeks damages for prior acts—is barred by the Eleventh Amendment. Plaintiff can, however, seek to enjoin any future discrimination by Secretary Houston. I will therefore deny defendants' 12(b)(1) motion with regard to plaintiff's § 1983 action against Secretary Houston for prospective injunctive relief but dismiss those portions of the complaint that seek retrospective damages.

### 4. The Pennsylvania Human Relations Act & Assumpsit

■ Counts IV and V of plaintiff's Amended Complaint name both the DPW and Secretary Houston and are premised on the Pennsylvania Human Relations Act ("PHRA"). Defendants assert that the Eleventh Amendment bars these claims from being heard in federal court. I agree.

Plaintiff's PHRA claim against defendant must be dismissed. Although the Third Circuit has not decided whether the Eleventh Amendment bars state law claims against the States and their agents in federal court, the courts within this district have widely recognized this application of the doctrine of sovereign immunity. *See, e.g., Moore v. Pennsylvania Dep't of Military and Veterans Affairs*, 216 F.Supp.2d 446, 454 (E.D.Pa.2002); *Williams v. Pennsylvania State Police–Bureau of Liquor Control Enforcement*, 108 F.Supp.2d 460, 465 (E.D.Pa.2000); *Fitzpatrick v. Commonwealth of Pennsylvania*, 40 F.Supp.2d 631, 635 (E.D.Pa. 1999); *Dill v. Commonwealth of Pennsylvania*, 3 F.Supp.2d 583, 587–88 (E.D.Pa. 1998). These district court decisions reflect the wishes of the Pennsylvania legislature, which is the only body that possesses the power to waive the state's Eleventh Amendment immunity. In 42 Pa.C.S.A. § 8521(b), the legislature waived the Commonwealth's immunity from suit under the PHRA—but only in state court. "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the United States." *Id.* Consistent with the decisions of my colleagues and the laws of this state, I find that the DPW is immune from suit under the PHRA in federal court.

■ Secretary Houston is also protected by Eleventh Amendment immunity. The Eleventh Amendment precludes suits for retrospective monetary relief against state officials in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169–70, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Officials sued in this manner are therefore afforded the same protection as the state itself. *See id.* As discussed above, the doctrine of *Ex Parte Young* is a significant exception to this general grant of immunity to state officers. In *Pennhurst State School & Hospital v. Halderman*, however, the Supreme Court chose not to apply *Young* to state law claims against state officers in federal court. *Pennhurst*, 465 U.S. 89, 105–106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Court offered the following explanation for its decision: "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id.* at 106, 104 S.Ct. 900. The Commonwealth has also explicitly stated that those state employees "acting within the scope of their duties," are protected by sovereign immunity. 1 Pa.C.S.A. § 2310. Therefore,

plaintiff's PHRA claim against Secretary Houston is barred.

For the reasons cited directly above, the doctrine of sovereign immunity bars plaintiff's common-law action for assumpsit against both the DPW and Secretary Houston.

## B. Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

After considering defendants' 12(b)(1) motion and disposing of the majority of plaintiff's claims for lack of subject matter jurisdiction, the following claims remain: Count III, which alleges a violation of § 504 of the Rehabilitation Act by the DPW, and Count VII, to the extent that it seeks prospective, injunctive relief from Secretary Houston. I will now consider whether plaintiff, in these two counts, has stated a claim upon which relief can be granted.

### 1. Section 504 of the Rehabilitation Act

 I will deny defendants' motion to dismiss plaintiff's § 504 claim. Accepting the facts in the pleadings as true and giving them all reasonable inferences, a court must dismiss under Rule 12(b)(6) "[i]f as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff has alleged facts that, if proven, are sufficient to state a legal claim under § 504 of the Rehabilitation Act. I will therefore deny defendants' 12(b)(6) motion.

### 2. Section 1983

I will also deny defendant's Rule 12(b)(6) motion to dismiss plaintiff's claim for prospective, injunctive relief against Secretary Houston. If, as plaintiff alleges, the defendants are wont to violate his federal or constitutional rights, then he can reasonably seek relief. Plaintiff has presented facts that, when construed in the light most favorable to him, support such a claim. Thus, I will deny defendant's 12(b)(6) motion.

## CONCLUSION

The Supreme Court's decision in *Garrett* and the Third Circuit's *Lavia* opinion have changed the legal landscape from that which plaintiff contemplated when he filed his complaint. Both *Garrett* and *Lavia* hold that state employees cannot sue their employers for employment discrimination under Title I of the ADA, despite Congress's effort to abrogate the Eleventh Amendment's presumption of state sovereign immunity in this area. Plaintiff's Title I claim is therefore barred by the Eleventh Amendment.[8]

 As discussed in *Garrett* and *Lavia*, the Eleventh Amendment generally precludes suit against a State and its agencies. This presumption applies even when a plaintiff asserts a state-law claim. Because plaintiff has failed to prove an exception to this presumption, his state actions for Assumpsit and disability discrimination are also barred. Those claims that are barred by the Eleventh Amendment must be dismissed under Rule 12(b)(1) because the federal courts lack jurisdiction to hear them. For this reason, Defendants' 12(b)(1) motion is granted-in-part.

---

**8.** For the reasons described earlier, I find that plaintiff's claim for employment discrimination is not covered by the ADA. Case law and principles of statutory construction suggest that both the courts and Congress understand Title II to address only issues of public accommodation. As plaintiff's claims arise solely from his employment with the DPW, he cannot state a claim under Title II of the ADA.

Defendants' 12(b)(1) motion is also denied-in-part. Despite the broad grant of sovereign immunity afforded by the Eleventh Amendment, the DPW and Secretary Houston are not entirely immune from suit. Congress validly abrogated the States' sovereign immunity when it passed the Rehabilitation Act. Also, the doctrine of *Ex Parte Young* allows a plaintiff to sue a state officer for prospective, injunctive relief under § 1983. Thus, plaintiff has presented two claims over which this court holds subject matter jurisdiction. Recognizing that I only have jurisdiction to decide defendants' 12(b)(6) motion with regard to these two surviving claims, I find that plaintiff has stated claims upon which relief can be granted. Accordingly, defendants' 12(b)(6) motion is denied as to plaintiff's surviving claims.

## ORDER

**AND NOW**, this day of December, 2002, the defendants' 12(b)(1) Motion to Dismiss (Docket # 5) is **GRANTED–IN–PART** and **DENIED–IN–PART**. Defendants' 12(b)(1) is GRANTED with regard to:

(1) Count I for Disability Discrimination under the ADA;

(2) Count II for Retaliation under the ADA;

(3) Count IV for Disability Discrimination under the PHRA;

(4) Count V for Retaliation under the PHRA;

(5) Count VI for Assumpsit;

(6) Count VII for Deprivation of Federally Protected Rights under 42 U.S.C. § 1983 as it pertains to defendant DPW and any retroactive relief sought from Secretary Houston.

Defendants' 12(b)(1) motion is **DENIED** with regard to:

(1) Count VII insofar as it seeks prospective injunctive relief from the Secretary;

(2) Count III for disability discrimination under the Rehabilitation Act.

**AND** Defendants' 12(b)(6) Motion to Dismiss (Docket # 5) is **DENIED**.